UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
SCOTT LUPIA,                                                         :
:
Plaintiff,                        :
:                         21-cv-11077 (LJL)
-v-                               :
:                         OPINION AND ORDER
NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,    :
:
Defendant.                        :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/7/2023___

LEWIS J. LIMAN, United States District Judge:

Plaintiff Scott Lupia ("Lupia" or "Plaintiff") moves *in limine* to exclude evidence or

argument concerning (1) third-party liability for injuries resulting from medical treatment

allegedly necessitated by Defendant New Jersey Transit's ("NJT" or "Defendant") negligence

and (2) apportionment of damages among Defendant and any third-party health care providers.

Dkt. No. 47.  Plaintiff also moves *in limine* to exclude evidence or argument concerning (3)

Plaintiff's potential receipt of Railroad Retirement Act disability benefits and (4) Plaintiff's

"eligibility for early retirement" under the Railroad Retirement Act.  Dkt. No. 46.  Defendant

moves (1) to exclude the testimony of John Alsdorf ("Alsdorf"), Dkt. No. 53, and (2) to exclude

the Rail Asset Management Systems ("RAMS") Incident Inquiry Report from the Period of

January 1, 2020 to December 31, 2020, Dkt. No. 54.  This opinion and order addresses all but the

last motion.

A jury trial in this case is scheduled for March 13, 2023.  Plaintiff asserts claims under

the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Locomotive

Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.*, arising from injuries he suffered as a

locomotive engineer in the employ of NJT on July 21, 2021.  On that date, Plaintiff collapsed

from heat exhaustion and suffered injuries to his head and neck after he was ordered to operate a

train in which his cab's air conditioning unit was not operating and the air temperature in his cab

rose in excess of 100 degrees Fahrenheit as a result.

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v.*

*Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve*

*v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). The decision whether to grant an *in*

*limine* motion "resides in a district court's inherent and discretionary 'authority to manage the

course of its trials.'" *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022)

(quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y.

2008)). "The trial court should exclude evidence on a motion *in limine* only when the evidence

is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d

161, 164 (S.D.N.Y. 2006). "Because a ruling on a motion *in limine* is 'subject to change as the

case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United*

*States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at

139).

## DISCUSSION

## I.    Injuries Resulting from Medical Treatment Necessitated by Defendant's Alleged Negligence

Following Plaintiff's injury on July 21, 2021, he received medical care from a number of

third-party medical providers, including surgery that occurred on October 12, 2021. Defendant

contends that the surgery caused new and permanent damage to Plaintiff. Dkt. No. 58 at 5.

Those injuries are a part of Plaintiff's "medical journey" and were purportedly a result of

malpractice that occurred during surgery.  *Id*. at 5–6.  For his part, Plaintiff argues that the jury should be instructed that if it finds that Defendant was negligent and that such negligence caused or contributed in whole or in part to Plaintiff's injuries, then the injury should include as part of Plaintiff's damages any further injury or damage sustained at the hands of a medical provider whom Plaintiff was forced to rely upon due to Defendant's negligence.  Dkt. No. 48 at 3–4.

Defendant concedes that under FELA, it is liable for any added injury "regardless of whether the subsequent injury resulted from negligent treatment."  Dkt. No. 58 at 3.  However, it argues that evidence concerning Plaintiff's subsequent surgery is relevant and admissible "as it relates to Plaintiff's medical journey."  *Id.*  It further argues that the risk of jury confusion is adequately addressed by the jury instructions in the parties' Joint Requests to Charge, which make clear that Defendant is responsible for subsequent injury from necessary medical care.  *Id.* at 3–5.

Under FELA, "the railroad is liable for any added injury caused by the malpractice of a treating physician."  *Lupia v. New Jersey Transit Rail Operations, Inc.*, 2022 WL 16549227, at *2 (S.D.N.Y. Oct. 31, 2022) (citing *Comeaux v. Southern Pac. Transp. Co.*, 609 F.2d 793, 795–96 (5th Cir. 1980)).  Moreover, "FELA does not authorize apportionment of damages between railroad and nonrailroad causes."  *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 159–60 (2003).  However, Defendant does not seek to offer evidence regarding the surgery on October 12, 2021, for purposes of shifting liability, but rather for its relevance to the quantum of damages.  Dkt. No. 58 at 5–6.

The Court denies Plaintiff's motion to preclude Defendant from offering any evidence regarding the surgery on October 12, 2021, that it constituted malpractice, and that it caused new and significant injuries to Plaintiff.   Under Federal Rule of Evidence 401, evidence is relevant if

"(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Such evidence is relevant, at a minimum, to show when Plaintiff suffered the injuries for which he claims damages and thus is relevant to the quantum of damages. Among other things, if it is shown that the injuries were new and that they were the result of malpractice, such evidence may be relevant to the relative gravity of Plaintiff's injuries before October 2021 and after October 2021. If there was such an intervening injury, Plaintiff should not receive the same quantum of damages for the period before October 2021 that he should receive for the period after that date. The risk of jury confusion will be abated by the Court's final instructions which make clear that Defendant is responsible for damages even if they resulted proximately from the intervening malpractice of a medical doctor. To the extent that the instructions are not sufficient, the Court will entertain at the time of trial a request for a limiting instruction and objections that particular items of evidence are cumulative or would cause undue prejudice under Rule 403.[1]

## II.     Receipt of Railroad Retirement Act Disability Benefits

Although Plaintiff is not currently receiving a Railroad Retirement Act disability pension, he has applied for such benefits and is awaiting a decision. He contends that any evidence or reference to collateral source disability benefits such as Railroad Retirement Board ("RRB") disability benefits is irrelevant and unduly prejudicial under the collateral source rule. Dkt. No. 48 at 8. The motion is not opposed.

"The 'collateral source' rule of common law 'permits a plaintiff to recover the full measure of his damages, without setoff, even though the plaintiff is also compensated from an

---

[1] For the same reasons, the Court denies Plaintiff's motion that Defendant should be precluded from offering any evidence or making any argument concerning any alleged medical mistake by any of Plaintiff's caregivers during treatment necessitated by Defendant's negligence. Dkt. No. 48 at 7. Such evidence is not categorically inadmissible.

4

independent source such as insurance.'"  *Perry v. Metro-N. Commuter R.R.*, 716 F. Supp. 61, 62

(D. Conn. 1989) (quoting *Brice v. National R.R.*, 664 F. Supp. 220, 221–22 (D. Md. 1987)).

Because of this rule, evidence as to Plaintiff's receipt of sickness and disability benefits from

independent sources such as the RRB would be irrelevant to the issue of Plaintiff's damages.

Defendant is therefore precluded from introducing such evidence under Federal Rules of

Evidence 401 and 403.  *See Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963)

("[P]etitioner's receipt of collateral social insurance benefits involves a substantial likelihood of

prejudicial impact."); *see also Torres v. Metro-N. R.R. Co.*, 2023 WL 2088174, at *1–2

(S.D.N.Y. Feb. 16, 2023).

## III.    Eligibility for Early Retirement under the Railroad Retirement Act

Defendant seeks to offer evidence that, under the RRB's Railroad Retirement Handbook,

Plaintiff would have been eligible to retire with maximum benefits after completing thirty years

of service and reaching the age of sixty.  Dkt. No. 58 at 6–7.  Plaintiff intends to call an

economic expert who calculates lost wages for Plaintiff on the assumption that, absent the injury

caused by Defendant's negligence, he "would have had a work-life to the age of 67 *when his

regular retirement would have been maximized*."  Dkt. No. 58-2 (emphasis added).  Defendant

argues that the evidence from the handbook is admissible to impeach that testimony and to

challenge the expert's assumption.  Dkt. No. 58 at 7–8.  Defendant does not seek to offer

evidence of the amount of retirement benefits Plaintiff has received or will receive.  *Id.* at 8.  As

a result, Defendant would not be able to argue that benefits should offset any compensation to

which Plaintiff is otherwise entitled.  Plaintiff argues that evidence he would have retired as soon

as he was eligible is inadmissible because it violates the collateral source rule and is based on

pure speculation.  Dkt. No. 48 at 9.

In *Eichel*, the United States Supreme Court rejected the argument of the defendant railroad that it was entitled to offer evidence of the disability pension payments that the plaintiff was receiving under the Railroad Retirement Act of 1937 to impeach the testimony of the plaintiff "as to his motive for not returning to work and as to the permanency of his injuries." 375 U.S. at 254.  The Court held that such evidence was properly excluded.  *Id*.  The Court concluded that "the likelihood of misuse by the jury [of the evidence] clearly outweigh[ed] the value of th[e] evidence," adding that "[i]nsofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of disability pension."  *Id.* at 255.  The Court went on to state that "receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact."  *Id.*

Thus, in this Circuit, "the general rule in FELA cases is that evidence of payments made to plaintiff from collateral sources is not admissible, though such evidence may be admissible if the plaintiff puts his financial status at issue."  *Santa Maria v. Metro-N. Commuter R.R.*, 81 F.3d 265, 272–73 (2d Cir. 1996).  "However, *Eichel* does not establish an absolute bar against the admission of such evidence for purposes other than mitigation of damages."  *Mills v. Energy Transp. Corp.*, 29 F. App'x 744, 745 (2d Cir. 2002).  The Second Circuit has also cautioned that "[s]hould the court find evidence of benefits payments admissible . . . , it of course must carefully limit the admission of the evidence so as to avoid undue prejudice."  *Santa Maria*, 81 F.3d at 272–73.

There is a division of authority concerning whether railroad retirement and/or disability benefits and the age at which one is eligible for such benefits can be received on the question of work/life expectancy.  A significant number of federal and state courts have held that evidence of

collateral source benefits is not admissible even to show the age at which the plaintiff would be expected to retire. *See*, *e.g.*, *Lee v. Consolidated Rail Corp.*, 1995 WL 734108, at *4–6 (E.D. Pa. 1995) (holding that evidence that the defendant would have been entitled to full retirement benefits at age 62 was properly excluded when offered to show that the plaintiff had economic incentives to retire); *Haischer v. CSX Transp., Inc.*, 848 A.2d 620, 630 (Md. 2004); *Norfolk S. Ry. Corp. v. Henry* Tiller, 944 A.2d 1272, 1288 (Md. Ct. Sp. App. 2008); *Griesser v. Nat'l R.R. Passenger Corp.*, 2000 PA Super 1999, ¶ 24, 761 A.2d 606, 612–13 (2000); *Brumely v. Federal Barge Lines, Inc.*, 396 N.E.2d 1333, 1339–1340 (Ill. App. Ct. 1979) (holding that evidence of social security and retirement benefits available at age 65 was not admissible to show plaintiff's motivation to retire at age 65); *see also Finley v. National R.R. Passenger Corp.*, 1 F. Supp. 2d 440, 442 (E.D. Pa. 1998) (mistrial properly granted where defendant argued that defendant's absence of work was not as a result of inability to work caused by injury but because of the availability to receive a full pension based on disability). Other courts have held, however, that evidence that the plaintiff is receiving disability benefits is admissible on the question whether the plaintiff's absence from work was the result of the defendant's negligence. *See Clements v. Norfolk S. Ry. Co.*, 2013 WL 255408, at *2 (M.D. Ga. Jan. 23, 2013) ("The fact Plaintiff receives $3,600 each month in disability benefits is directly probative on the issue of Plaintiff's lack of motivation to return to work."), *on reconsideration in part*, 2013 WL 427759 (M.D. Ga. Feb. 4, 2013); *Valentine v. CSX Transp., Inc.*, 2011 WL 2066705, at *2 (S.D. Ind. May 25, 2011) ("Depending on how events unfold at trial, evidence of collateral source benefits may be relevant to whether Plaintiff has a motive for not returning to work and to cast doubt on the permanency of Plaintiff's injuries.").

In *Reed v. Philadelphia, Bethlehem & New England R. Co.*, 939 F.2d 128 (3d Cir. 1991), the court held that it was error for the district court to permit defense counsel to argue—in response to a plaintiff summation argument that the defendant railroad was "callous" in producing evidence that most railroad employees retired at age 62—that the plaintiff had been provided disability benefits through the federal system, but that ruling was based in part on the fact that there was no evidence in the record to support defendant's argument of disability benefits. *Id.* at 133–34. In *Gousgoulas v. National RR Passenger Corp.*, 2017 WL 1483359 (S.D.N.Y. Apr. 24, 2017), the court allowed defendant to challenge the anticipated testimony by plaintiff that she intended to work until age 66 and 3.5 months by offering evidence that she would have been entitled to retire with partial benefits at age 62 and with full benefits at age 67 if she continued to work for Defendant, reasoning in part that "[s]ince the retirement benefits are hypothetical rather than actual, there is no reason for the jury to offset plaintiff's award by the benefit she might have received if she had not been injured," but in that case the evidence was not inconsistent with plaintiff's argument that she still had an inventive to work until age 66. The court did state, however, that "even the cases that rejected the proffered evidence acknowledge that defendants should be able to challenge a plaintiff's stated intended retirement age." *Id.* The Second Circuit has not spoken to the issue.[2]

---

[2] Certain of the cases cited by Plaintiff either are not directly on point or do not contain any analysis useful for deciding the present motion. *See Page v. St. Louis Southwestern Ry. Co.*, 349 F.2d 820, 821 (5th Cir. 1965) (concerning admission evidence of the amount of pension benefits plaintiff was receiving beginning one year after the accident following *Eichel*); *Neigum v. BNSF Railway Co.*, 2008 WL 1049905, at *2 (D.N.D. April 8, 2008) (holding without analysis that defendant would be allowed to offer evidence of the age at which plaintiff would have retired absent the injury but would not be permitted to present evidence of plaintiff's retirement benefits from the railroad); *Jackson v. BNSF Railway Co.*, 2008 WL 410591, at *2 (D. Colo. Feb. 13, 2008) (holding that evidence of railroad disability benefits should be excluded "unless [p]laintiff's actions at trial trigger an opportunity for Defendant to appropriately respond with collateral source evidence"); *Edsall v. CSX Transportation, Inc.*, 2008 WL 244344, at *2 (N.D.

The Court will allow Defendant to offer evidence that Plaintiff's regular retirement benefits will be maximized at age 60.  Even the cases that exclude evidence of retirement benefits recognize that the argument for admission of such evidence has "logical appeal."  *Lee,* 1995 WL 734108, at *5; *see also Tiller*, 944 A.2d at 1278 ("The employee's eligibility for retirement benefits at a particular age . . . is unquestionably relevant evidence at to the probable age at which the employee might have been expected to stop working.").  The courts that exclude such evidence do so on the basis that its admission creates the risk that a jury could decide not to compensate Plaintiff for all the years he naturally would have worked beyond the retirement eligibility date solely on basis that the plaintiff will receive compensation for those years in the form of retirement benefits.  *See Griesser v. Nat'l R.R. Passenger Corp.*, 2000 PA Super 1999, ¶ 24, 761 A.2d 606, 612–13 (2000) ("[T]he jury could conclude that Amtrak was liable for lost wages to age 65 or 70, but then decline to award such damages because of the fortuitous existence of equivalent retirement benefits.  Or, the jury could conclude that Appellant was entitled to benefits only to age 60 and was attempting to seek a double recovery of benefits after age 60. In short, this evidence distracts the jury from the issues in the case and has a strong likelihood of prejudicing the plaintiff.").   "[T]he concern appears to be that the jury, notwithstanding any limiting instruction, would: (1) believe the plaintiff's testimony he intended to retire at age sixty-five; (2) assume the plaintiff now can retire at age sixty; and (3) therefore award the plaintiff less than the full lost wages through age sixty-five by offsetting some amount

---

Ind. Jan. 28, 2008) (holding without analysis that evidence of disability and sickness benefits should be excluded but that defendant can use "other less prejudicial methods of proof to show lack of motivation"); *Magelky v. BNSF Railway Co.*, 2008 WL 238451, at *7 (D.N.D. Jan. 28, 2008) (holding without analysis that evidence of retirement benefits or other payments received by plaintiff "after the slip-and-fall is not admissible at trial because such payments are collateral sources").

for the retirement benefits available at age sixty." *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 721 (Iowa 2014).   Moreover, the admission of evidence regarding the retirement benefits the plaintiff will receive, and the date on which he or she is eligible to receive them, might create an exception that swallows the rule.   As the Maryland Supreme Court put it in *Haischer*, "[e]vidence as to . . . expected work-life is not only relevant, but necessary, to establish the amount of . . . wage loss.  If that kind of evidence suffices to trigger collateral source evidence, there would be nothing left of the collateral source rule."  848 A.2d at 630.   If the defendant wishes to challenge the expert's testimony regarding expected retirement age, it can do so with statistical evidence regarding when railroad employees typically retire without reference to the benefits that they will receive upon retirement.  *See Pepin v. Wisconsin Central Ltd.*, 2021 WL 4472797, at *3 (W.D. Mich. Sept. 30, 2021).

In this case, however, Defendant does not seek to admit the amount of retirement benefits or their relation to wages Plaintiff would have earned had he been able to work.  Defendant does not seek to offer the evidence to show malingering or for purposes of mitigation of damages. *Eichel* is not strictly controlling.  Defendant seeks merely to admit evidence that Plaintiff's retirement benefits will be maximized at age 60 not age 67.  Moreover, Plaintiff has himself opened the door not just by offering expert evidence of his work/life expectancy, but through that evidence's explicit assumption that he will work until age 67 and will then receive maximum retirement benefits at that age.  It is thus a fair response for Defendant to offer evidence that the predicate for the expert's testimony is mistaken and that the age at which Plaintiff will receive maximum retirement benefits (without any indication of what those benefits will be) is 60, and not 67.  *Cf. Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1127 (E.D. Mo. 2013) (holding that defendant can offer evidence that plaintiff was eligible to retire at age 60 without offering

evidence as to the availability or amount or retirement benefits because plaintiff "cannot expect to testify he unequivocally intended to retire at the age of 67, thereby increasing any potential damages, without allowing Defendant an opportunity to challenge his assertions").  Thus, at trial, Defendant may offer evidence that Plaintiff was "eligible to retire" at the age of 60.  It may not, however, introduce evidence regarding the availability or amount of retirement benefits. *Stevenson v. Union Pac. R.R. Co.,* 2009 WL 652932, at *3 (E.D. Ark. Mar. 12, 2009) ("Defendant can introduce evidence that plaintiff would be eligible to retire at age 60, however it will be precluded from introducing evidence as to the availability of retirement benefits or the amount."); *see also Giza*, 843 N.W.2d at 724 (rejecting argument that statistics regarding when employees typically retire should be excluded on the basis that the jury would be able to "connect the dots" and learn that plaintiff was eligible to retire and start receiving a pension at age 60, because "the alternative would leave the railroad without a realistic way to challenge the testimony of the plaintiff and the plaintiff's damages expert").

If (1) Defendant's evidence is limited to that Plaintiff would be entitled to retire at age 60 with maximum retirement benefits and (2) it is offered in response to expert testimony regarding work/life expectancy informed by a different assumption regarding the date on which Plaintiff could retire with such benefits, the prejudicial impact of the proposed evidence is not outweighed by its probative value.  Fed. R. Evid. 403.  There is no other more probative manner to challenge an assumption regarding the age at which retirement would have been maximized other than evidence as to when retirement would have been maximized.  Since the jury will not have the amount of the retirement benefits, it will be difficult—if not impossible—to offset such benefits against the amount that Plaintiff would have received in wages had he continued to work, or to assume that he would have retired rather than continued to receive wages from working.  *See*

*Gousgoulas*, 2017 WL 1483359, at *2 ("Since the retirement benefits are hypothetical rather than actual, there is no reason for the jury to offset plaintiff's award by the benefit she might have received if she had not been injured.").  The jury, moreover, will be instructed that in calculating future lost earnings, it should consider the amount of wages he would have received in each year.  Dkt. No. 51 at 39 (proposed joint requests to charge).  If Plaintiff would like a limiting instruction when the evidence is offered, the Court will give one.

Plaintiff's remaining argument that the evidence from the Handbook would lead to speculation is without merit.  It is Plaintiff's burden to prove damages.  Subsumed within that burden is the obligation to offer evidence with respect to future wages as to the length of time Plaintiff would have continued to work had he not been injured as a result of Defendant's negligence.  Like any testimony regarding the likelihood of a future event, such evidence will not be inherently certain and requires a certain amount of prognostication.  But that does not make it purely guess work.  It must be based upon fact.  And the Handbook itself will not be offered or received for the purpose of demonstrating that Plaintiff would have retired at age 60.  It will be received as a piece of data that can inform the likelihood that Plaintiff would have worked until age 67.  It is therefore not excludable on the basis that it is speculative.

## IV.   Testimony of John Alsdorf

Defendant moves to preclude Plaintiff from calling  John Alsdorf as a witness. Alsdorf is a co-worker of Plaintiff and a friend of his at NJT.  Plaintiff describes Alsdorf's anticipated testimony as follows in the joint pretrial order:

> John Alsdorf – Plaintiff's co-worker will testify (in person) about his experience of the conditions in the New Jersey Transit locomotive cab and the operation of the cab window and observations of the cab window and plaintiff's impairment and the impact of his injuries on his life.

Dkt No. 49 at 6.

Defendant argues that evidence regarding the conditions of the cab and the operations of the window in other locomotives or on other dates is irrelevant and that Alsdorf's proposed testimony on Plaintiff's injuries would be cumulative in light of the testimony Plaintiff is intending to offer from himself, his wife, and his own medical providers.  Dkt. No. 55 at 2–3.

The evidence is relevant and not unduly cumulative.  Defendant expects to offer evidence of Plaintiff's contributory negligence in the form of his failure to open the window to decrease the temperature inside the cab.  Such evidence is expected to come from a manager and an expert who were not in the cab with Plaintiff on the day of the accident.  Dkt. No. 49 at 7.  It is a fair response for Plaintiff to offer a witness who can testify to the operation of the same window on the same model locomotive cabs.  Any difference between the cabs of the same model and Alsdorf's lack of personal knowledge regarding the specific operation of the window on the cab that Plaintiff was in on the day of the accident is grist for cross-examination and not for exclusion.  As for the lay opinion testimony regarding the impact of the accident on Plaintiff, such testimony is not cumulative.  The Court expects to give an instruction on interested witnesses.  Plaintiff is permitted to call a witness who has a basis of personal knowledge with respect to the impact of the accident on Plaintiff and who is not interested.

## CONCLUSION

Ruling on Defendants motion *in limine* to preclude the RAMS Incident Inquiry Report is RESERVED.[3]  Plaintiff's motion *in limine* to preclude evidence as to Plaintiff's receipt of

---

[3] Defendant moves to preclude a RAMS Incident Inquiry report from January 1, 2020, through December 31, 2020, which includes information of other reported incidents regarding Engine 4627, the locomotive cab operated by Plaintiff on the day of the incident, both before and after the accident in question.  Defendant argues that the evidence is irrelevant under Federal Rule of Evidence 401 and unduly prejudicial under Federal Rule of Evidence 403.  Dkt. No. 55 at 3–4. Plaintiff responds that the report constitutes an admission and is relevant to Defendant's negligence.  The Court reserves decision until it can see a copy of the exhibit and hear argument at the time of the final pretrial conference.

sickness and disability benefits from independent sources such as the RRB is GRANTED.  The

motions *in limine* are otherwise DENIED.  The Clerk of Court is respectfully directed to close

Dkt. Nos. 46, 47, 53, 54.

      SO ORDERED.

Dated: March 7, 2023
      New York, New York

                                 LEWIS J. LIMAN
                           United States District Judge